UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, in its capacity as Conservator of Federal National Mortgage Association; and FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>Plaintiffs,<br>vs.<br><br>NEVADA NEW BUILDS, LLC, a Nevada Domestic Limited Liability Company,<br><br>Defendant. | Case No.: 2:16-cv-1188-GMN-CWH<br><br>ORDER |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 9), filed by Plaintiffs Federal National Mortgage Association ("Fannie Mae") and Federal Housing Finance Agency ("FHFA") (collectively "Plaintiffs"). Defendant Nevada New Builds, LLC ("Defendant") filed a Response, (ECF No. 10), and Plaintiffs filed a Reply, (ECF No. 11).

## I.     BACKGROUND

The present action involves the interplay between Nevada Revised Statute § 116.3116 and 12 U.S.C. § 4617 as it relates to the parties' interests in three real properties located at: (1) 3952 Edgemoor Way, Las Vegas, Nevada ("Edgemoor Way"), (Mot. for Summ. J. ("MSJ") 5:24–26, ECF No. 9); (2) 1050 East Cactus Avenue, No. 1127, Las Vegas, Nevada ("East Cactus Avenue"), (*id.* 6:19–21); and (3) 435 Mesa Boulevard, Unit 202, Mesquite, Nevada ("Mesa Boulevard"), (*id.* 9:6–8) (collectively the "Properties").

**1. Edgemoor Way**

On September 26, 2003, Darline K. Shrader ("Shrader") obtained a loan (the "Edgemoor Loan") in the amount of $148,800 from Countrywide Home Loans, Inc. ("Countrywide") that

was secured by a Deed of Trust on the Edgemoor Way Property. (Deed of Trust, Ex. C to MSJ, ECF No. 9-3).[1] Fannie Mae purchase the Edgemoor Loan on October 1, 2003, and has owned it ever since. (*See* Curcio Decl., Ex. D to MSJ ¶¶ 12–14, ECF No. 9-4).

On August 2, 2013 a Corporate Assignment of Deed of Trust was recorded, whereby Mortgage Electronic Registration Systems, Inc. ("MERS"), as the nominee for Countrywide and Countrywide's successors and assigns, assigned the Deed of Trust to Fannie Mae. (Ex. E to MSJ, ECF No. 9-5).

On November 30, 2013, Alessi & Koenig, LLC (A&K), as agent for Forest Hills HOA (the "Forest Hills HOA") held a trustee's sale, selling the Edgemoor Way Property to the Forest Hills HOA for $11,418.74. (Ex. F to MSJ, ECF No. 9-6). On February 11, 2015, the Forest Hills HOA recorded a quitclaim deed that transferred the Edgemoor Way Property to Defendant. (Ex. G to MSJ, ECF No. 9-7).

### 2. East Cactus Avenue

On October 6, 200, Lawrence Shamuel ("Shamuel") obtained a loan (the "East Cactus Loan") in the amount of $156,000 from Countrywide that was secured by a Deed of Trust on the East Cactus Avenue Property. (Deed of Trust, Ex. I to MSJ, ECF No. 9-9). Fannie Mae purchased the East Cactus Loan on October 1, 2004, and has owned it ever since. (*See* Curcio Decl., Ex. D to MSJ ¶¶ 6–8).

On June 1, 2011 an Assignment of Deed of Trust was recorded, whereby MERS, as the nominee for Countrywide and Countrywide's successors and assigns, assigned the Deed of Trust to BAC Home Loans Servicing, LP ("BAC"). (Ex. J to MSJ, ECF No. 9-10). Then on October 14, 2013, an additional Assignment of Deed of Trust was recorded where BAC

---

[1] The Court takes judicial notice of Exhibits C, E, F, G, I, J, K, L, M, N, O, P, Q, R, S to Plaintiffs' Motion for Summary Judgment. (*See* ECF No. 9); *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Each of these documents is publicly recorded in the Clark County Recorder's Office.

assigned the Deed of Trust to Green Tree Servicing, LLC ("Green Tree"). (Ex. K to MSJ, ECF No. 9-11).

On February 7, 2014, Nevada Association Services, Inc. ("NAS"), as trustee for Antiqua Condominiums, held a trustee's sale, selling the East Cactus Avenue Property to Paul Turcutto ("Turcutto") and Athena Sack ("Sack") for $16,000. (Ex. L to MSJ, ECF No. 9-12). On June 18, 2014, Turcutto sold the East Cactus Avenue Property to Azzurra Capital, LLC ("Azzurra"), and on September 18, 2014, Sack transferred her interest to Azzurra as well. (Ex. M to MSJ at 1, ECF No. 9-13); (Ex. O to MSJ at 1, ECF No. 9-15). Azzurra is an affiliate of Defendant. (Ex. P to MSJ at 1, ECF No. 9-16).

**3. Mesa Boulevard**

On November 30, 2007, Jay D. Hills and Rhoda V. Hills obtained a loan (the "Mesa Boulevard Loan") in the amount of $99,200 from Freedom Mortgage Corporation and MERS that was secured by a Deed of Trust on the Property. (Ex. Q to MSJ at 1–2, ECF No. 9-17). Fannie Mae purchased the Mesa Boulevard Loan on December 1, 2007, and has owned it ever since. (*See* Curcio Decl., Ex. D to MSJ ¶¶ 17–19).

On February 19, 2014, A&K, as trustee for Rock Springs Mesquite HOA (the "Rock Springs HOA"), held a trustee's sale, selling the Mesa Boulevard Property to the Rock Springs HOA for $6,375.48. (Ex. R to MSJ at 1, ECF No. 9-18). At this time, MERS was the beneficiary of record of the Mesa Boulevard Deed of Trust as nominee for Lender and Lender's successors and assigns, which included Plaintiffs. (*Id.*). On June 5, 2014, Rock Springs HOA recorded a quitclaim deed that transferred the Mesa Boulevard Property to Defendant. (Ex. S to MSJ at 1, ECF No. 9-19).

Plaintiffs initiated this action by filing the Complaint on May 26, 2016, asserting claims for quiet title and declaratory relief against Defendant. (Compl. ¶¶ 29–48, ECF No. 1). On August 3, 2016, Plaintiffs filed the pending Motion for Summary Judgment. (MSJ, ECF No. 9).

## II. **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and

the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.  DISCUSSION

In the instant Motion for Summary Judgment, Plaintiffs request that the Court declare that "12 U.S.C. § 4617(j)(3) preempts any Nevada law that otherwise would permit a foreclosure of an HOA lien to extinguish a property interest of Fannie Mae while it is under FHFA's conservatorship," "the HOA Sale did not extinguish Fannie Mae's interest in the Property and thus the Deed of Trust continues to encumber the Property," and "any interest of

the Plaintiff in the Property is subject to Fannie Mae's first secured interest in the Property." (MSJ 21:25–22:4).

The Court addressed the applicability of 12 U.S.C. § 4617(j)(3) in *Skylights LLC v. Fannie Mae*, 112 F. Supp. 3d 1145 (D. Nev. 2015). After addressing many different arguments regarding the applicability of § 4617(j)(3), the Court held that the plain language of § 4617(j)(3) prohibits property of FHFA from being subject to a foreclosure without its consent. *Id.* at 1159.

Here, Fannie Mae has held an interest in each of the Properties since, respectively, October 1, 2003; October 1, 2004; and December 1, 2007. (*See* Curcio Decl., Ex. B to MSJ ¶¶ 6–19). Accordingly, because FHFA held an interest in the Deeds of Trust as conservator for Fannie Mae prior to the HOA foreclosures, § 4617(j)(3) prevents the HOA foreclosures on the Properties from extinguishing the Deeds of Trust.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment, (ECF No. 9), is **GRANTED**. The Court finds that 12 U.S.C. § 4617(j)(3) preempts Nevada Revised Statute § 116.3116 to the extent that a homeowner association's foreclosure of its super-priority lien cannot extinguish a property interest of Fannie Mae or Freddie Mac while those entities are under FHFA's conservatorship. Accordingly, the HOAs' foreclosure sales of their super-priority interest on the Properties did not extinguish Fannie Mae's interest in the Properties secured by the Deeds of Trust or convey the Properties free and clear to Defendant.

The Clerk of Court shall enter judgment accordingly and close the case.

**DATED** this  3  day of March, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court